**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN JENNINGS, Individually and on behalf of all others similarly situated, ) ) | LEAD CASE NO. 1:18CV931 |
| Plaintiff, ) ) | JUDGE CHRISTOPHER A. BOYKO |
| vs. ) ) | FINAL ORDER AND JUDGMENT |
| FAIRMOUNT SANTROL HOLDINGS, INC., et al., ) ) ) | |
| Defendants. ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon Lead Plaintiffs' Motion for Final Approval of Settlement, Final Certification of the Settlement Class and Approval of Award of Attorneys' Fees and Expenses. (ECF DKT #42).

## I. BACKGROUND

On December 11, 2017, Fairmount Santrol entered into an Agreement and Plan of Merger, providing that Fairmount Santrol would merge into Unimin Corporation with Fairmount Santrol surviving as a direct wholly-owned subsidiary of Unimin. Unimin would become the parent holding company for the "Combined Company" and Fairmount Santrol stockholders would become owners of 35% of the Combined Company's ("Covia") common

stock and would receive approximately $0.74 per share of Fairmount Santrol common stock.

On April 18, 2018, Fairmount Santrol filed a proxy statement with the SEC. The proxy statement summarized the Merger Agreement; provided an account of the events leading up to the execution of the Merger Agreement; stated that the Fairmount Santrol board of directors determined that the merger was in the best interest of the stockholders; and summarized the valuation analyses and fairness opinion by the financial advisor, Wells Fargo Securities, LLC. A special Stockholder Meeting was scheduled for May 25, 2018, at which Fairmount Santrol stockholders would vote on the proposed Merger.

On April 24, 2018, Plaintiff John Jennings, an asserted owner of 1,000 shares of Fairmount Santrol stock, filed a putative Class Action lawsuit in this Court for alleged violations of the Securities Exchange Act of 1934 with respect to disclosures on a Registration Statement seeking approval from Fairmount shareholders for the proposed acquisition of the company by Unimin Corporation. The Complaint and subsequent Complaints initiated by Jorge O. Chabrier Rosello, Barry Schneider, Jeffrey Fitzgibbon and Melvyn Klein (District of Delaware) were brought pursuant to the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 ("PSLRA").

On May 2, 2018, Plaintiff Jennings filed a Motion for Preliminary Injunction to enjoin the May 25, 2018 shareholder vote until Defendants disclosed material information allegedly omitted from the Proxy Statement.

On May 14, 2018, counsel for Jennings, Rosello, Schneider and Fitzgibbon entered into a Memorandum of Understanding ("MOU") with counsel for Defendants Fairmount Santrol and the individual Fairmount directors setting forth an agreement for the

dissemination of additional information to the stockholders addressing the disclosure deficiencies.  On May 15, 2018, Fairmount filed a Form 8-K with the SEC which substantially mooted the claims in Plaintiffs' Complaints and also mooted the need for injunctive relief.  All the pending Preliminary Injunction Motions were withdrawn.

On May 25, 2018, at a special meeting of the stockholders of Fairmount Santrol, the holders of the majority of the outstanding shares of Fairmount Santrol voted to approve the Merger, effective June 1, 2018.  Nearly 80% of the outstanding shares entitled to vote participated in the May 25, 2018 vote and over 99% of that number voted in favor of the Merger.

On June 7, 2018, the Court entered an Order consolidating the Jennings, Rosello, Schneider, Fitzgibbon and Klein actions under Lead Case No. 1:18CV931.

On July 9, 2018, the Court entered an Order appointing Jennings, Schneider and Fitzgibbon as Lead Plaintiffs pursuant to the PSLRA, and approved Monteverde & Associates and Levi & Korsinsky as Class Counsel and Karon LLC as Liaison Counsel.

Lead Plaintiffs pursued discovery in furtherance of the terms of the MOU.  Class Counsel reviewed publicly-available documents related to the Merger and non-public documents provided by Defendants and Wells Fargo.  Class Counsel also took the depositions of Matthew LeBaron, the former chairman of the board of Fairmount Santrol, and of a representative of Wells Fargo, Fairmount Santrol's financial advisor.

On November 9, 2018, the parties entered into a Stipulation of Settlement (ECF DKT #30-3), concluding among other matters, that the Supplemental Disclosures provided Fairmount Santrol's stockholders with material information that cured the disclosure

deficiencies, misstatements, and/or omissions forming the basis for the Lawsuit(s), and permitted Fairmount Santrol's stockholders to make a materially fully informed decision with respect to the Merger. The Stipulated Settlement defined the Settlement Class as: **consisting of all record and beneficial holders of Fairmount Santrol's common stock, their respective successors in interest, successors, predecessors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, together with their predecessors and successors and assigns, who held Fairmount Santrol common stock at any time between and including December 11, 2017 and June 1, 2018, but excluding the Defendants, their subsidiary companies, affiliates, assigns, and members of their immediate families, as the case may be (the "Settlement Class").**

The parties agreed to the Release of all claims of any nature against any Released Persons that would be related to disclosures or concerning the decision to enter into the Merger**,** but specifically excluding: (a) the right to enforce the Settlement; (b) the right of any member of the Settlement Class to pursue any properly perfected claims for appraisal pursuant to 8 Del. C. § 262; and (c) any claims under federal securities laws *that do not arise out of, or relate to*, the Merger, the Merger Agreement, the transactions contemplated thereby, any statements regarding the Merger, the Merger Agreement, the Proxy Statement, or any other disclosures (including the adequacy and completeness of such disclosures) or the Supplemental Disclosures. (Emphasis added).

On November 26, 2018, the Court issued an Order (ECF DKT #31) preliminarily

approving the Settlement and preliminarily certifying the non-opt-out class**.**  The Court also scheduled a Final Settlement Hearing; authorized first-class U.S. Mail service of Notice to members of the Settlement Class; ordered proper notice upon the appropriate official of each State in which a member of the Settlement Class resides and upon the Attorney General of the United States in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715, *et seq.*; and set a schedule for filing objections and written intentions to appear at the Hearing.

The Final Settlement Hearing was held on April 26, 2019.  One individual, Thomas Marc Vinson, filed a timely Notice of Intention to Appear.  (ECF DKT #37).  Vinson also filed his Objections to Plaintiffs' Motion to Certify the Class under Fed.R.Civ.P. 23(b)(1) and 23(b)(2).  (ECF DKT #43).  The parties, through counsel of record, presented their arguments in support of the Settlement.  Vinson, who was the only person to file any objection and intention to appear at the Hearing, was given the opportunity to present testimony and oral argument through retained counsel.

## II. OBJECTIONS

In his written filing, Vinson states that he "objects only to the extent that his individual claims for monetary damages are precluded by the parties' stipulation of settlement."  (ECF DKT #43 at 1).  In his Declaration (ECF DKT #43-1), Vinson states that he owned a substantial amount of Fairmount Santrol common stock which was converted to Covia Holdings common stock in June of 2018.  Vinson further declares that, for four days following the close of the Merger, he was not provided with marketable shares, was unable to trade his Covia shares and lost well over a hundred thousand dollars of value in his Fairmount Santrol common stock and options contract holdings.  (*Id*. at ¶¶ 5-6).  Vinson contends that

the "combination of pre-merger nondisclosures, perilously late disclosures, and questionable managerial choices before and immediately after June 1, 2018, caused weeks of conflicting and contradictory guidance to [his] brokers from the [Options Clearing Corporation] regarding the value and processing of 'new' CVIA adjusted options." (*Id*. at ¶ 8). The material misrepresentations occasioned the various Class Action lawsuits and drove the market price for Covia Holdings down, resulting in his substantial monetary losses. (Objections, ECF DKT #43 at 4-5). Vinson also objects to the decision of the Lead Plaintiffs to abandon the money damages claims in their Complaints in exchange for attorney fees. (*Id*. at 3). The mandatory nature of the proposed Settlement Class deprives Vinson of his right to opt out and initiate his own action against Defendants for their wrongdoings. (*Id*. at 6).

At the Final Settlement Hearing, Vinson testified that he owned 30,000 shares of Fairmount Santrol common stock in December of 2017; by May of 2018, he owned 10,000 more; and by June 1, 2018, he added 10,000 more, plus a significant number of options. He testified that he could not trade his shares on June 1, 2018; the shares were not credited to his brokerage accounts. He insists that he did not have "marketable title" until June 5, 2018. According to Vinson, the Supplemental Disclosures added little. He thought the information was adequate to justify holding onto the shares through June 1; however, in hindsight, the additional Disclosures were adequate but incomplete in several ways, as to the cash compensation, the capitalization of the Combined Company and the financial status of Unimin, among other missing data. When asked on direct examination what he would have done if he had marketable shares on June 1, 2018, Vinson answered that he would have held them. But as they declined, he would have "lightened" his position considerably.

Vinson's counsel, Daniel Shimko, argued that Vinson and the absent shareholders are entitled to the right to bring suit. The Settlement and Release unfairly deprives them of their due process rights because every claim against Fairmount Santrol for any conduct happening before June 1 is barred. The Lead Plaintiffs' decision to abandon their monetary damages claims does not adequately represent Vinson's wishes. The new Covia stock was issued under a cloud of litigation and the stock took some time to reflect the effect of the omitted additional disclosures. Attorney Shimko posited the theory that the 99% favorable shareholder vote demonstrates that no one cared what the Supplemental Disclosures were. If the Supplemental Disclosures were meaningful, Attorney Shimko opines that there would have been fewer votes in favor of the Merger.

### III. ANALYSIS AND FINDINGS

Upon consideration of the briefs, sworn testimony, documentary exhibits and oral arguments in the above-captioned matter, the Court finds that the Objections of Thomas Marc Vinson do not warrant disapproval of the Settlement.

At the outset, the Court holds Vinson to the knowledge and education he possesses, that is, to the extent that he possesses a Bachelor's Degree, a Master's Degree and a Ph.D. The Court also notes that Vinson is a sophisticated and substantial stockholder.

Vinson admits that he received the Proxy Statement, that he participated in the May 25, 2018 vote and voted *for* the Merger. Vinson conducted his own investigation, including telephone calls to his brokers and to Covia investment relations.

The Proxy Statement received by all shareholders cautions: "The market price of the combined company common stock following the closing of the Merger could be volatile and

Fairmount Santrol Stockholders could lose all or part of their investment" and "the market price of the combined company common stock following the closing of the Merger ... could be subject to wide fluctuations in response to various factors, some of which are beyond the combined company's control."

Vinson is not a registered owner of Fairmount Santrol (now Covia) shares. The Covia shares were made available to his nominees, his brokers, on the next business day (Monday, June 4, 2018) following the completion of the Merger. Lead Plaintiffs pointed out at the Hearing that on June 1, 2018, 130,000 shares of Covia stock were traded on the New York Stock Exchange. Vinson's claimed inability to trade is the result of his own investment strategy, that is, his own choice to trade and invest through a broker or brokers. Vinson admits that he is a Covia shareholder as of June 1, 2018. He has chosen to hold the Covia shares for months after the dates that his brokerage accounts were credited with his shares.

There was no delay caused by the issuance of the Supplemental Disclosures obtained through the negotiations between Lead Plaintiffs and Defendants. The stockholder vote went forward as scheduled on May 25, 2018. The Merger closed on time. The shares were converted from Fairmount Santrol to Covia on June 1, 2018.

Vinson has not demonstrated that his rights as a Covia shareholder and/or his potential claims against Covia are released by the Stipulated Class Action Settlement. His alleged monetary losses fall outside the Class time period (between and including December 11, 2017 and June 1, 2018).

A Rule 23(b)(2) "non-opt-out" class presumes a homogenous class. Vinson has failed to make a sufficient *showing* of individualized issues as to liability or remedy so as to

overcome the presumption. He has not shown that his position is so distinguishable from other class members to justify denying approval of the stipulated settlement terms.

A "non-opt-out" class is particularly appropriate when injunctive relief is the primary relief sought. Lead Plaintiffs alleged monetary loss in their Complaints in order to sufficiently plead their Securities Violations Claims. Money would not have benefitted the Class Members to the extent that informative and corrective Supplemental Disclosures did. It is not so much that Lead Plaintiffs abandoned their monetary relief; rather, they reached an arm's length compromise of their claims with Defendants.

Pursuant to the Stipulation of Settlement, Defendants agreed not to oppose Lead Plaintiffs' application for attorneys' fees and expenses in a sum not to exceed $320,000.00. Lead Plaintiffs set forth their counsel's vigorous advocacy and discovery efforts, resulting in Defendants' providing the Supplemental Disclosures prior to the stockholder vote. The Supplemental Disclosures granted Fairmount Santrol stockholders the ability to value the Company, further understand the Wells Fargo analysis and independently determine whether the Merger consideration was equitable.

The payment of attorneys' fees and expenses for this work will come entirely from Defendants. The amount sought is within the range of fee awards approved in similar securities lawsuits. Reviewing the lodestar calculation, the requested fee is slightly less, yet is inclusive of expenses. Aside from Vinson, no Class Member objected to the Class Action Settlement which outlined the upper limit of the attorneys' fees requested. Moreover, the Court notes that Vinson objects to the fact that the Class is obtaining only non-monetary relief while Class Counsel and Liaison Counsel would be recovering fees and expenses in the

hundreds of thousands of dollars. However, Vinson offers no opposition to the services provided by Class Counsel and Liaison Counsel nor to the hourly rates charged.

Vinson contends that his Due Process rights and those of the absent shareholders are being denied by this Settlement. However, it is well-settled that constitutional rights can be waived. Not one other shareholder has come forward to ask the Court to protect his or her Due Process rights. Moreover, neither Vinson nor his counsel has clearly articulated what his claims are, against whom, and how the Release bars his pursuit of those potential claims. The Court finds that Vinson's "shotgun" approach prevents the Court and the parties from addressing his objections with any clarity. His complaints are vague and only tenuously related to the Settlement. He alleges general mismanagement, but by whom and of what nature? In the Court's view, Vinson's disputes are more appropriately with his brokers as to any delay or inability to trade his significant holdings, or simply a matter of the vehicle he chose to hold and trade stock.

In sum, the Objections put forth by Thomas Marc Vinson do not legitimately challenge the fairness, reasonableness and adequacy of the Class Action Settlement.

**IT IS THEREFORE ORDERED** as follows:

1. Unless otherwise defined in this Order and Final Judgment, all capitalized terms shall have the meanings set forth in the Stipulation of Settlement. (ECF DKT #30-3).

2. The Notice of Proposed Settlement of Class and Derivative Action and Hearing (the "Notice") has been provided to the Settlement Class pursuant to and in the manner directed by the Preliminary Approval Order. Proof of the mailing of the Notice was filed with the Court and a full opportunity to be heard has been afforded to all parties to the Action, the

Settlement Class, and other persons interested in the Settlement. The Court determines that the Notice provided to members of the Settlement Class constituted the best notice practicable under the circumstances, constituted due and sufficient notice of the Action, the Settlement, and the matters set forth in said Notice to all persons entitled to receive notice, and fully satisfied the requirements of due process and Federal Rule of Civil Procedure 23. The Court further determines that all members of the Settlement Class are bound by this Order and Final Judgment. Defendants further caused to be served on the United States Attorney General and all State Attorneys General notice pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1711 et seq. ("CAFA"), and the form and manner of that notice is determined to be in full compliance with CAFA.

3. Based on the record in the Action, the Court finds that each of the provisions of Federal Rule of Civil Procedure 23 has been satisfied and that the Action has been properly maintained according to the provisions of Federal Rules of Civil Procedure 23(a), 23(b)(1), and 23(b)(2). Specifically, the Court finds that (a) the Settlement Class is so numerous that joinder of all members is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of Lead Plaintiffs as representative plaintiffs are typical of the claims of the Settlement Class; (d) Lead Plaintiffs and Class Counsel have fairly and adequately protected and represented the interests of the Settlement Class; (e) prosecution of separate actions by individual members of the Settlement Class Members would create a risk of inconsistent or varying adjudications that would establish inconsistent standards of conduct for the Defendants; and (f) Defendants have acted on grounds that generally apply to the Settlement Class.

4. The Action is finally certified as a non-opt-out class action, pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), and 23(b)(2), on behalf of a class consisting of any and all record and beneficial holders of Fairmount Santrol common shares, their respective successors in interest, successors, predecessors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, together with their predecessors and successors and assigns, who held Fairmount Santrol common shares at any time between and including December 11, 2017 and June 1, 2018, the date on which the Merger was consummated, but excluding Defendants, their subsidiary companies, affiliates, assigns, and members of their immediate families, as the case may be (the "Settlement Class").  Further, Lead Plaintiffs and the law firms of Karon LLC ("Liaison Counsel"), and Levi & Korsinsky LLP and Monteverde & Associates PC (together, "Class Counsel") have fairly and adequately represented the interests of the Settlement Class in enforcing their rights in the Action and are finally certified as Settlement Class representatives and Class Counsel, respectively.

5. The Settlement is found to be fair, reasonable, adequate, and in the best interests of the Settlement Class, and is approved pursuant to Federal Rule of Civil Procedure 23(e).  The parties to the Stipulation are authorized and directed to comply with and to consummate the Settlement in accordance with its terms and the Clerk is directed to enter and docket this Order and Final Judgment in the Action.

6. The Action, the claims asserted therein and the Released Claims (as defined below) are dismissed with prejudice as to all Defendants in the Action and against all members of

-12-

the Settlement Class and, except as otherwise provided in the Stipulation and in paragraph 12 below, without the award of any damages, costs or fees, or the grant of any further relief.

      7. As of the Effective Date, Lead Plaintiffs and all members of the Settlement Class will be deemed to have fully, finally and forever released, settled and discharged all claims of every nature and description whatsoever, against any of the Released Persons (defined below), that have been or could have been asserted in any court, tribunal, or proceeding (including but not limited to any claims arising under federal, state, or common law, including the federal securities laws and any state disclosure law), by or on behalf of Lead Plaintiffs or any member of the Settlement Class in his, her, or its capacity as a Fairmount Santrol stockholder (the "Releasing Persons"), related to any disclosures (or lack thereof) to Fairmount Santrol's stockholders concerning the Merger and any fiduciary-duty claims concerning the decision to enter into the Merger, in any forum, including individual, direct, class, derivative, representative, legal, equitable, or any other type or in any other capacity, whether state or federal, common law, or statutory, including, without limitation, claims under the federal securities laws (the "Released Claims"); provided, however, for the avoidance of doubt, the Released Claims shall not include (i) the right to enforce the Settlement; (ii) the right of any member of the Settlement Class to pursue any properly perfected claims for appraisal pursuant to 8 Del. C. § 262; and/or (iii) any claims under the federal securities laws that do not arise out of, or relate to, the Merger, the Merger Agreement, the transactions contemplated thereby, any statements regarding the Merger, the Merger Agreement, the Proxy Statement, or any other disclosures made in connection therewith (including the adequacy and completeness of such disclosures) or the Supplemental

Disclosures.

For purposes of this Order and Final Judgment, each of following persons or entities is a "Released Person," and collectively, they are "Released Persons": Jenniffer D. Deckard, Matthew F. LeBaron, William E. Conway, Michael G. Fisch, Charles D. Fowler, Stephen J. Hadden, Michael C. Kearney, William P. Kelly, Michael E. Sand, Lawrence N. Schultz and Fairmount Santrol Holdings Inc. (now known as Bison Merger Sub I, LLC), and each of their respective past or present family members, spouses, heirs, trusts, trustees, executors, estates, administrators, beneficiaries, distributees, foundations, agents, employees, fiduciaries, partners, control persons, partnerships, general or limited partners or partnerships, joint ventures, member firms, limited liability companies, corporations, parents, subsidiaries, divisions, affiliates, associated entities, stockholders, principals, officers, managers, directors, managing directors, members, managing members, managing agents, predecessors, predecessors-in-interest, successors, successors-in-interest, assigns, financial or investment advisors, advisors, consultants, investment bankers, funding sources, entities providing any fairness opinion, underwriters, brokers, dealers, lenders, commercial bankers, attorneys, personal or legal representatives, accountants, insurers, coinsurers, reinsurers and associates.

8. Defendants, including any and all of their respective successors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under any of them, and each of them, forever release Lead Plaintiffs, Class Counsel and the members of the Settlement Class from any and all claims arising out of or relating to the filing and prosecution of the Action and any Released Claims; provided, however, that the Release

shall not include the right of Defendants to enforce the terms of the Settlement.

9. The Releasing Persons shall waive and relinquish, to the fullest extent permitted by law, the provisions, rights and benefits of any state, federal or foreign law or principle of common law, which may have the effect of limiting the release set forth above.  This shall include a waiver by the Releasing Parties of any rights pursuant to Section 1542 of the California Civil Code (or any similar, comparable, or equivalent provision of any federal, state, or foreign law, or principle of common law), which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Plaintiff acknowledges, and the members of the Class shall be deemed by operation of the entry of the Final Order and Judgment approving the Settlement to have acknowledged, that the waiver was separately bargained for, is an integral element of the Settlement, and was relied upon by each and all of the Defendants in entering into the Settlement.

10. Lead Plaintiffs and all members of the Settlement Class, and any of them, and anyone acting on their behalf, are barred and enjoined from commencing, prosecuting, instigating or in any way participating in the commencement or prosecution of any action asserting any Released Claims, either directly, representatively, derivatively, or in any other capacity, against any Released Party.

11. Neither the Stipulation, the Settlement, this Order and Final Judgment, nor any negotiation had, act performed, or document executed pursuant to or in furtherance of the Stipulation or the Settlement (a) is or may be deemed to be, or may be used or construed as, a

presumption, concession or admission of, or evidence of, the validity or lack of validity of any

Released Claims or any wrongdoing or liability of Defendants or a waiver of any applicable statute of limitations; (b) is or may be deemed to be, or may be used or construed as a presumption, concession or admission of, or evidence of, any fault, liability or wrongdoing as to any facts or claims that have been or might be alleged or asserted in the Action, or any other action or proceeding that has been, will be, or could be brought in relation to the Released Claims, the Merger, the Merger Agreement, the Proxy Statement, or any other negotiation, deliberation, or action taken or contemplated with regard to any proposal concerning these matters, nor may they nor any of them or any portion of them be interpreted, construed, deemed, invoked, offered, or received in evidence or otherwise used by any person in the Action, or in any other action or proceeding, whether civil, criminal or administrative, for any purpose other than as expressly provided. Notwithstanding the foregoing, any of the Released Persons may file the Stipulation or any judgment or related order of the Court in any action to enforce the provisions of the Stipulation or in any action that may be brought against them, in order to support any and all defenses or counterclaims based on res judicata, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion, or similar defense or counterclaim.

    12. Class Counsel are awarded attorneys' fees and expenses in the amount of $320,000.00, which sum the Court finds to be fair and reasonable and which shall be paid to Class Counsel in accordance with the terms of the Stipulation.

    13. The effectiveness of this Order and Final Judgment and the obligations of Lead

Plaintiffs, Class Counsel, the Settlement Class and the Defendants under the Settlement shall not be conditioned upon or subject to the resolution of any appeal that relates solely to the issue of the application for an award of attorneys' fees and expenses.

14. The Court further ORDERS that all other relief is denied and that this Order and Final Judgment disposes of all the claims as to all the parties in the Action.

15. Without affecting the finality of this Final Order and Judgment, the Court retains and reserves jurisdiction over all matters relating to the interpretation, administration, implementation, effectuation and enforcement of the Stipulation and the Settlement.

16. In the event that this judgment does not become "Final" in accordance with paragraph 6 of the Stipulation, then the judgment shall be rendered null and void to the extent provided by the Stipulation and this Order and Final Judgment shall be vacated. In such event, all orders entered in connection with the Settlement shall be null and void and the Settlement Class shall be decertified. In such event, the Action shall return to its status prior to execution of the MOU.

**IT IS SO ORDERED.**

                                                **s/ Christopher A. Boyko**
                                                **CHRISTOPHER A. BOYKO**
                                                **United States District Judge**

Dated: May 3, 2019